IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 08-0246
════════════
 
 
Gilbert Texas Construction, 
L.P., Petitioner,
 
v.
 
Underwriters at Lloyd’s 
London, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Fifth District of Texas
════════════════════════════════════════════════════
 
Argued October 6, 2009
 
 
            
Justice Johnson delivered 
the opinion of the Court.
 
 
            
During a Dallas Area Rapid Transit Authority (DART) construction project, 
unusually heavy rains resulted in water damage to a building adjacent to the 
construction site. The owner of the building sued DART and its contractors, 
alleging that construction activities caused the water damage. The building 
owner sued the general contractor in tort and for breach of contract. In the 
breach of contract claim, the building owner alleged that the general contractor 
assumed liability for the damage under its contract with DART. Except for the 
breach of contract claim, the trial court granted summary judgment for the 
general contractor on the basis of governmental immunity. The general contractor 
later settled the breach of contract claim and sought indemnity from its 
insurers. The excess insurer denied coverage.
            
The primary issue is whether the contractual liability exclusion in a 
Commercial General Liability (CGL) policy excludes coverage for property damage 
when the only basis for liability is that the insured contractually agreed to be 
responsible for the damage, and if so, whether an exception to the exclusion 
operates to restore coverage. We hold that the exclusion applies, the exception 
does not, and there is no coverage.
I. 
BACKGROUND
A. The 
Underlying Suit
            
In 1993, DART contracted with Gilbert Texas Construction, L.P., as 
general contractor, to construct a light rail system. One part of the contract 
required Gilbert to protect the work site and surrounding 
property:
 
10. Protection of Existing Site 
Conditions
 
a. The Contractor shall preserve and protect all 
structures . . . on or adjacent to the work site. . . .
 
b. The Contractor shall protect from damage all existing 
improvements and utilities (1) at or near the work site and (2) on adjacent 
property of a third party . . . [and] repair any damage to those facilities, 
including those that are the property of a third party, resulting from failure 
to comply with the requirements of this contract or failure to exercise 
reasonable care in performing the work. If the Contractor fails or refuses to 
repair the damage promptly, [DART] may have the necessary work 
performed and charge the cost to the Contractor.
 
            
During construction, Dallas suffered an unusually heavy rain, and a 
building adjacent to the construction area was flooded. RT Realty (RTR), the 
building’s owner,[1] sued DART, Gilbert, and other persons and 
entities involved in the construction. RTR alleged various theories of 
liability, including violations of the Texas Transportation Code and the Texas 
Water Code, nuisance, and trespass. RTR also claimed it was a third-party 
beneficiary of the contract between Gilbert and DART and that Gilbert was liable 
to RTR for breach of that contract.
            
Gilbert’s primary insurance coverage was by a CGL policy with Argonaut 
Insurance Company. Gilbert also had several layered excess coverage policies[2] through Underwriters at Lloyd’s London[3] (Underwriters). Argonaut assumed 
Gilbert’s defense and provided a list of approved defense counsel to Gilbert, 
who selected attorney James Grau to defend it. The 
original answer Grau filed for Gilbert contained a 
pleading asserting that Gilbert had sovereign immunity.[4]
            
Through its coverage counsel, Underwriters sent a series of reservation 
of rights letters to Gilbert. The letters generally (1) reviewed the claims made 
by RTR in each successive petition, (2) noted that under its policy, 
Underwriters did not have a duty to defend Gilbert and its obligation to 
indemnify Gilbert did not depend on allegations made in RTR’s pleadings but 
would be determined by the judgment rendered and facts found in the suit, (3) 
stated that a coverage determination was not possible because no judgment had 
yet been entered and no fact finding accomplished, and (4) referenced various 
policy provisions that might preclude coverage for the damages being sought from 
Gilbert. In addition, the letters reserved Underwriters’ rights to deny coverage 
under the policies and noted the potential conflict of interest between Gilbert 
and Underwriters because of Underwriters’ position that damages claimed by RTR 
might not be covered. Underwriters’ policy included a provision allowing 
Underwriters to associate with Gilbert in defense of claims.
            
Other defendants also responded to RTR’s suit, in part, by claiming they 
had governmental immunity. The parties moved for summary judgment. The trial 
court granted Gilbert’s motion on immunity grounds for all of RTR’s claims 
except breach of contract.
            
A few weeks after the trial court granted partial summary judgment to 
Gilbert, Underwriters sent another reservation of rights letter. In that letter, 
Underwriters, for the first time, took the specific position that RTR’s breach 
of contract claim was not covered because Underwriters’ policy excluded coverage 
for contractual liability. Gilbert settled RTR’s breach of contract claim for 
$6.175 million. Underwriters denied coverage.
B. The Coverage 
Suit
            
Gilbert sued Underwriters for breach of contract and Insurance Code 
violations, also urging that Underwriters waived its right to deny coverage and 
was estopped to deny coverage. Both parties moved for 
summary judgment on all issues. The trial court granted Gilbert’s motion as to 
coverage and granted Underwriters’ motion as to Gilbert’s statutory, waiver, and 
estoppel claims.
            
Underwriters and Gilbert both appealed. The court of appeals reversed and 
rendered judgment for Underwriters, holding that the breach of contract claim 
(1) fell within the policy’s contractual liability exclusion and (2) was not 
excepted from the exclusion. 245 S.W.3d 29, 34-35 (Tex. 
App.—Dallas 2007, pet. granted). It additionally held that Underwriters had not 
waived its policy defenses and was not estopped from 
raising the defense of non-coverage because Underwriters had not assumed 
Gilbert’s defense. Id. at 37.
            
In this Court, Gilbert asserts that (1) the contractual liability 
exclusion does not apply because Gilbert’s liability arises from its own breach 
of contract and not from another’s liability that Gilbert assumed; (2) even if 
the exclusion applies, an exception to the exclusion brings the breach of 
contract claim back into coverage because Gilbert would have been liable to RTR 
in the absence of its contract with DART; and (3) in the alternative, 
Underwriters asserted control over Gilbert’s defense and prejudiced Gilbert, so 
under an estoppel theory Gilbert should be awarded damages for the amount it 
paid to settle RTR’s lawsuit.
            
We agree with the court of appeals: the contractual exclusion applies to 
the breach of contract claim and the exception for liability the insured would 
have absent its contract is inapplicable. Further, we determine that 
Underwriters did not assume control of Gilbert’s defense, Gilbert was not 
prejudiced by Underwriters’ actions, and Underwriters is not required to pay 
damages to Gilbert under an estoppel theory.[5]
II. 
DISCUSSION
A. Standard of 
Review
            
The parties do not dispute the applicable burdens of proof. Initially, 
the insured has the burden of establishing coverage under the terms of the 
policy. Ulico Cas. Co. v. Allied Pilots Ass’n, 262 S.W.3d 773, 782 
(Tex. 2008). If the insured proves coverage, then to avoid 
liability the insurer must prove the loss is within an 
exclusion. Id. If the insurer proves that an 
exclusion applies, the burden shifts back to the insured to show that an 
exception to the exclusion brings the claim back within coverage. Comsys 
Info. Tech. Servs., Inc. v. Twin City Fire Ins. 
Co., 130 S.W.3d 181, 193 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); 
see also Century Sur. Co. v. Hardscape Constr. 
Specialties, Inc., 578 F.3d 262, 265 (5th Cir. 2009).
            
When both sides move for summary judgment, as they did here, and the 
trial court grants one motion and denies the other, reviewing courts consider 
both sides’ summary-judgment evidence, determine all questions presented, and 
render the judgment the trial court should have rendered. Embrey 
v. Royal Ins. Co. of Am., 22 S.W.3d 414, 415-16 (Tex. 
2000).
B. 
Jurisdiction
            
As a preliminary matter, Underwriters argues that we lack jurisdiction. 
Gilbert contends, in part, that we have jurisdiction because the court of 
appeals’ opinion conflicts with opinions of other courts of appeals on a 
question of law material to the decision of the case. See Tex. Gov’t Code § 22.001(a)(2). We agree with Gilbert. The court of appeals’ decision 
is contrary to a decision of the Fourteenth Court of Appeals that held the 
contractual liability exclusion is limited to liability assumed for conduct of a 
third party, such as in an indemnity or hold-harmless agreement. See Lennar Corp. v. Great Am. 
Ins. Co., 200 S.W.3d 651, 693 (Tex. 
App.—Houston [14th Dist.] 2006, pet. denied). Here, the court 
of appeals held that the exclusion applies because Gilbert assumed liability in 
its contract with DART. 245 S.W.3d at 34. We have 
jurisdiction pursuant to Section 22.001(a)(2) of the 
Government Code.
C. Contractual 
Liability Exclusion
            
Coverage A of the policy, which is entitled “Bodily Injury and Property 
Damage Liability,” provides that the insurer “will pay those sums that the 
insured becomes legally obligated to pay as damages because of ‘bodily injury’ 
or ‘property damage’ to which this insurance applies. . . . The ‘bodily injury’ 
or ‘property damage’ must be caused by an occurrence.” Exclusion 2(b)provides that the insurance does not apply 
to
 
“Bodily injury” or “property damage” 
for which the insured is obligated to pay damages by reason of the assumption of 
liability in a contract or agreement. This exclusion does not apply to liability for 
damages:
(1) Assumed in a contract or agreement that is an 
“insured contract;” or
(2) That the insured would have in the absence of the 
contract or agreement.
 
The policy’s definitions section 
provides a definition of “insured contract.” The term is defined as seven types 
of agreements, the last of which is an agreement to assume another’s tort 
liability:
 
                                    
“Insured contract” means:
                                                            
a. A lease of premises;
                                                            
b. A sidetrack agreement;
                                                                                    
. . .
                                                
g. That part of any other contract or agreement pertaining to your 
business under which you assume the tort liability of another to pay damages 
because of “bodily injury” or “property damage” to a third person or 
organization, if the contract or agreement is made prior to the “bodily injury” 
or “property damage.” Tort liability means a liability that would be imposed by 
law in the absence of any contract or agreement.
 
            
Underwriters does not argue that RTR’s claim is not within the general 
terms of the policy; rather, it asserts that exclusion 2(b)—the contractual 
liability exclusion—precludes coverage because at the time Gilbert settled, the 
trial court had already granted summary judgment on all RTR’s statutory and tort 
claims, and the only basis for liability remaining was for breach of contractual 
obligations Gilbert assumed in its contract with DART. Gilbert contends the 
contractual liability exclusion applies more narrowly. It contends the exclusion 
applies only in the limited situation in which the insured has assumed the 
liability of another such as in hold-harmless or indemnity agreements. 
Gilbert argues that to hold otherwise runs afoul of our decision in Lamar 
Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1 (Tex. 2007), in which we 
stated that a breach of contract claim can involve an occurrence and coverage 
does not turn on the label of the cause of action. Finally, Gilbert contends 
that, at the very least, the exclusion is ambiguous and must be interpreted in 
favor of coverage.
1. Preservation 
on Appeal
            
Underwriters argues at the outset that Gilbert 
waived its argument regarding the inapplicability of the exclusion because 
Gilbert did not timely assert and brief the issue in the court of appeals. 
See Tex. R. 
App. P. 53.2(f). As 
Underwriters observes, the court of appeals did not consider, in depth, the 
applicability of the exclusion because Gilbert did not dispute its applicability 
in its initial appeal. 245 S.W.3d at 34. Gilbert argues 
that it prevailed on the exclusion issue in the trial court and did not need to 
initially raise the issue in the court of appeals. We agree with 
Gilbert.
            
After the court of appeals reversed the trial court’s judgment on this 
issue, Gilbert challenged the court of appeals’ judgment both in a motion for 
rehearing in the court of appeals and in its petition for review. While 
ordinarily a party waives a complaint not raised in the court of appeals, a 
complaint arising from the court of appeals’ judgment may be raised either in a 
motion for rehearing in that court or in a petition for review in this Court. 
See Tex. R. 
App. P. 53.2(f); Bunton v. Bentley, 153 S.W.3d 50, 53 (Tex. 
2004). Gilbert did not waive the issue.
2. Scope of the 
Exclusion
            
The policy at issue is a standard CGL policy developed by the Insurance 
Services Office, Inc. (ISO).[6] See Lamar Homes, 
242 S.W.3d at 5; 2 Jeffrey W. Stempel, 
Stempel on Insurance Contracts § 14.01 (3d ed. 2007). The meaning 
of the terms and exclusions within a standard policy should theoretically be the 
same in Texas as in other states. See Lamar Homes, 242 
S.W.3d at 5. However, a lack of consensus on the meaning of terms in a 
CGL policy is not unusual. As noted above, Texas courts of appeals have reached 
different conclusions about the exclusion’s effect, as have other state and 
federal courts.
            
The principles Texas courts use when interpreting an insurance policy are 
well established. Those principles include construing the policy according to 
general rules of contract construction to ascertain the parties’ intent. Don’s Bldg. Supply, Inc. v. OneBeacon Ins. Co., 267 S.W.3d 
20, 23 (Tex. 2008); Kelley-Coppedge, Inc. v. 
Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998). First, we look 
at the language of the policy because we presume parties intend what the words 
of their contract say. See Don’s Bldg. Supply, 267 
S.W.3d at 23. We examine the entire agreement and seek to harmonize and 
give effect to all provisions so that none will be meaningless. See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex. 1999). 
The policy’s terms are given their ordinary and generally-accepted meaning 
unless the policy shows the words were meant in a technical or different sense. 
Don’s Bldg. Supply, 267 S.W.3d at 23; see also Sec. Mut. Cas. 
Co. v. Johnson, 584 S.W.2d 
703, 704 (Tex. 1979). Courts strive to honor the parties’ 
agreement and not remake their contract by reading additional provisions into 
it. See Nat’l Union Fire Ins. Co. of Pittsburg, PA v. Crocker, 246 S.W.3d 603, 606 (Tex. 2008). With these principles in 
mind, we turn to the language of the exclusion.
            
Considered as a whole, the contractual liability exclusion and its two 
exceptions provide that the policy does not apply to bodily injury or property 
damage for which the insured is obligated to pay damages by reason of the 
assumption of liability in a contract or agreement, except for enumerated, 
specific types of contracts called “insured contracts” and except for instances 
in which the insured would have liability apart from the contract. In this case, 
Gilbert agreed under its contract with DART to “repair any damage to . . . 
facilities, including those that are the property of a third party, resulting 
from failure to comply with the requirements of this contract or failure to 
exercise reasonable care in performing the work.” RTR originally sued on tort 
and statutory theories of liability, then added a breach of contract claim. But 
Gilbert prevailed on its summary-judgment motion, leaving only RTR’s breach of 
contract claim. Thus, the only liability theory remaining at the time Gilbert 
settled arose from Gilbert’s undertaking in the contract with DART—an obligation 
Gilbert assumed by contract. And Gilbert does not claim there are facts that 
could result in its being liable under some other theory besides breach of 
contract. Underwriters argues that the exclusion 
unambiguously applies to the breach of contract claim.
            
Gilbert, however, argues that the policy’s plain language is not as plain 
as it might seem. Citing several authorities, Gilbert contends that in order to 
give meaning to the word “assumption” in the exclusion, the liability assumed 
must be that of another. E.g., Am. Family Mut. Ins. Co. v. Am. Girl, 
Inc., 673 N.W.2d 65, 80-81 (Wis. 2004) (“The 
term ‘assumption’ must be interpreted to add something to the phrase ‘assumption 
of liability in a contract or agreement.’ Reading the phrase 
to apply to all liabilities sounding in contract renders the term ‘assumption’ 
superfluous.”). In other words, Gilbert would have us read the exclusion to say 
“‘property damage’ for which the insured is obligated to pay damages by reason 
of the assumption of another’s liability in a contract or agreement.” 
Underwriters counters that we should not judicially 
rewrite the exclusion by inserting the word “another’s” into it. We agree with 
Underwriters.
            
The exclusion bars coverage for liability of a third party that is 
assumed, such as that assumed by an indemnity agreement. But had it been 
intended to be so narrow as to apply only to an agreement in which the 
insured assumes liability of another party by an indemnity or hold-harmless 
agreement, it would have been simple to have said so. The parties’ intent is 
governed by what they said in the insurance contract, not by what one side or 
the other alleges they intended to say but did not. See Fortis Benefits v. 
Cantu, 234 S.W.3d 642, 647, 649 (Tex. 2007) (noting that contract rights 
arise from the parties’ agreement and declining to “judicially rewrite the 
parties’ contract by engrafting extra-contractual standards”); Fiess v. State Farm Lloyds, 202 S.W.3d 744, 
753 (Tex. 2006) (“[W]here the language is plain and unambiguous, courts must 
enforce the contract as made by the parties, and cannot make a new contract for 
them, nor change that which they have made under the guise of 
construction.”).
            
The exclusion applies when the insured is obligated to pay damages “by 
reason of the assumption of liability in a contract or agreement.” Those terms 
are not defined, so we give them their “generally accepted or commonly 
understood meaning.” Lamar Homes, 242 S.W.3d at 8 (citing W. Reserve 
Life Ins. Co. v. Meadows, 261 S.W.2d 554, 557 (Tex. 1953)). To “assume” 
means to “undertake.” Webster’s Third New International 
Dictionary 133 (2002). “Liability” is “[t]he quality or state of 
being legally obligated or accountable.” Black’s Law Dictionary 997 (9th ed. 
2009). Independent of its contractual obligations, Gilbert owed RTR the duty to 
comply with law and to conduct its operations with ordinary care so as not to 
damage RTR’s property, and absent its immunity it could be liable for damages it 
caused by breaching its duty. In its contract with DART, however, Gilbert 
undertook a legal obligation to protect improvements and utilities on property 
adjacent to the construction site, and to repair or pay for damage to any such 
property “resulting from a failure to comply with the requirements of this 
contract or failure to exercise reasonable care in performing the work.” 
(emphasis added). The latter obligation—to exercise 
reasonable care in performing its work—mirrors Gilbert’s duty to RTR under 
general law principles. The obligation to repair or pay for damage to RTR’s 
property “resulting from a failure to comply with the requirements of this 
contract” extends beyond Gilbert’s obligations under general law and 
incorporates contractual standards to which Gilbert obligated itself. The trial 
court granted summary judgment on all RTR’s theories of liability other than 
breach of contract, so Gilbert’s only potential liability remaining in the 
lawsuit was liability in excess of what it had under general law principles. 
Thus RTR’s breach of contract claim was founded on an obligation or liability 
contractually assumed by Gilbert within the meaning of the policy 
exclusion.
            
Further, considering the exclusion and its exceptions as a whole 
reinforces our conclusion. See MCI Telecomms., 
995 S.W.2d at 652 (“When interpreting a contract, we examine the entire 
agreement in an effort to harmonize and give effect to all provisions of the 
contract so that none will be meaningless.”); Kelley-Coppedge, Inc., 980 S.W.2d at 464 (observing that we 
must “attempt to give effect to all contract provisions so that none will be 
rendered meaningless”). The first exception—the insured-contract exception—lists 
six specific types of contracts to which the exclusion does not apply. The 
seventh and final item in the list addresses assumption of another’s tort 
liability: “That part of any other contract or agreement pertaining to your 
business under which you assume the tort liability of another to pay 
damages because of ‘bodily injury’ or ‘property damage’ to a third person or 
organization . . . .” (emphasis added). The fact that 
the definition explicitly references assumption of the tort liability of 
another demonstrates that the parties are capable of using such narrow, 
specific language when that is their intent.
            
Gilbert argues that the exclusion should be read as applying to all 
situations in which the insured assumes another’s liability while the 
insured-contract exception to the exclusion should be read as applying only to 
agreements in which the insured assumes another’s tort liability. We agree that 
the insured-contract exception brings back into coverage contracts in which the 
insured assumes the tort liability of another—it says it does. But the exclusion 
does not say it is limited to the narrow set of contracts by which the insured 
assumes the liability of another person; the exclusion’s language applies 
without qualification to liability assumed by contract except for two 
situations: (1) specified types of contracts referred to as “insured 
contracts,” including indemnity agreements by which the insured assumes 
another’s tort liability, and (2) situations in which the insured’s liability 
for damages would exist absent the contract—in other words, situations in which 
the insured’s liability for damages does not depend solely on obligations 
assumed in the contract.
            
Gilbert further argues that if the exclusion were meant to apply to a 
breach of contract claim like the one at issue in this case, it could easily 
have said just that. To illustrate its argument, Gilbert 
points to language in another section of the policy—“Coverage B. Personal and 
Advertising Injury Liability.” As we understand it, Gilbert’s argument is 
that Coverage B has an exclusion for both personal injury and advertising injury 
that is substantively the same as Coverage A’s contractual liability exclusion, 
except Coverage B’s exclusion does not provide coverage for “insured contracts” 
as does the Coverage A exclusion:
 
                                    
This insurance does not apply to:
 
                                    
a. “Personal injury” or “advertising 
injury:”
                                                            
. . .
                        
(4) For which the insured has assumed liability in a contract or 
agreement. This exclusion does not apply to liability for damages that the 
insured would have in the absence of the contract or 
agreement.
 
Gilbert argues that if the foregoing 
exclusion applied to all contractual obligations, then a separate exclusion in 
Coverage B specific to advertising injury would be unnecessary. That particular 
exclusion provides as follows:
 
                                    
b. “Advertising injury” arising out of:
                        
(1) Breach of contract, other than misappropriation of advertising 
ideas under an implied contract.
 
According to Gilbert, if Coverage B’s 
contractual liability exclusion excluded all breach of contract claims, then the 
express breach of contract claim exclusion for advertising injury would be 
unnecessary. We are not persuaded. We do not hold that the exclusion in Coverage 
A precludes liability for all breach of contract claims. We hold that it means 
what it says: it excludes claims when the insured assumes liability for damages 
in a contract or agreement, except when the contract is an insured contract or 
when the insured would be liable absent the contract or agreement. The express 
breach of contract exclusion in Coverage B, on the other hand, excludes all 
claims “arising out of” a breach of contract—a potentially larger category of 
claims than is excluded under the contractual liability exclusion.[7]
3. Holdings 
from Other Jurisdictions
            
Other jurisdictions have interpreted the exclusion differently than the 
way we do today. Gilbert points out that some jurisdictions, including the 
federal Fifth Circuit, have suggested, and held, that the exclusion applies to a 
limited category of cases in which the insured assumes the liability of another, 
such as in an indemnity or hold-harmless agreement.[8] Underwriters, on the other hand, cites 
cases interpreting the exclusion as we do—not limiting the exclusion’s scope to 
only those situations in which the insured has assumed the liability of 
another.[9] While we believe our interpretation of 
the policy accords with longstanding principles of Texas insurance contract 
interpretation, we consider it worthwhile to examine the rationale of courts 
reaching contrary conclusions.
            
Most courts that have held the exclusion to be limited in nature and to 
apply only when indemnity or hold-harmless agreements are involved have relied 
on a case from the Alaska Supreme Court, Olympic, Inc. v. Providence 
Washington Insurance Co. of Alaska, 648 P.2d 1008 (Alaska 1982), which 
interpreted an earlier version of the standard CGL form.[10] When Olympic was decided in 1982, 
the CGL policy contained an exclusion for contractual liability that was similar 
to the exclusion in the CGL policy before us, but which included an exception 
for “incidental contracts” rather than “insured contracts.” See id., at 
1010; 21 Eric Mills Holmes, Holmes’ 
Appleman on Insurance § 132.3[B][1] (2d ed. 
1996) (explaining the 1973 CGL contractual liability exclusion). The definition 
of “incidental contract” was narrower than the definition of “insured contract”; 
it did not include an explicit exception for certain indemnity or hold-harmless 
agreements as does the current CGL policy. See 21 Eric Mills Holmes, Holmes’ Appleman on 
Insurance § 132.3[B][1]. Instead, coverage 
for specific indemnity or hold-harmless agreements was generally provided 
through a broad-form endorsement to the CGL policy. See 
2 Rowland H. Long, The law of Liability 
Insurance § 10.05[2] (2006).
            
In 1986, the ISO revised the CGL form to generally provide coverage for 
indemnity and hold-harmless agreements through the insured-contract exception 
within the general CGL policy, as opposed to through a broad-form endorsement. 
See 21 Eric Mills Holmes, Holmes’ 
Appleman on Insurance § 132.3[B] (explaining that the purpose of the 1986 
revision was to “combine the essence of the former 1973 [contractual liability 
exclusion] with the expanded liability coverage formerly provided under the 
broad-form endorsement”); See Am. Family Mut. Ins. 
Co., 673 N.W.2d at 81.
            
With this history in mind, we examine Olympic. In that case, a 
lessee agreed to obtain insurance indemnifying its lessor, but obtained insurance indemnifying only itself in 
case of breach of the lease between the parties. Olympic, 648 P.2d at 
1009-10. When a firefighter was killed in a fire on the leased premises, the 
firefighter’s estate sued both lessee and lessor. 
Id. at 1010. The lessor’s insurer settled with the firefighter’s estate, then 
sued the lessee’s liability insurer to recover part of the settlement. 
Id. The lessor’s insurer claimed the lessee’s 
insurer was liable because the lessee breached the lease agreement. Id. 
The lessor’s insurer asserted that the lessee’s 
insurer’s incidental contract exception to the contractual liability exclusion 
for “any written . . . lease of premises” implied that the policy insured 
against liability pursuant to any contract that was an incidental contract, i.e. 
the lease agreement. Id. The Alaska Supreme Court disagreed, holding that 
“‘[l]iability assumed by the insured under any 
contract’ refers to liability incurred when one promises to indemnify or hold 
harmless another, and does not refer to the liability that results from breach 
of contract.” Id. at 1011. According to the 
court, because the exclusion was limited to indemnity and hold-harmless 
agreements and did not apply, the exception to the exclusion for leases could 
not bring the claim into coverage because the contract was not an indemnity or 
hold-harmless agreement. Id. Accordingly, the court held that the 
lessee’s policy did not cover its failure to procure proper insurance coverage. 
Id. at 1013-14.
            
The Olympic court was interpreting the pre-1986 contractual 
liability exclusion, thus the court did not have a specific exception for 
indemnity or hold-harmless agreements before it as part of the contract. The 
court was not faced with a circular reading of the exclusion and 
insured-contract exception as we are in the instant dispute. However, the 
rationale behind the Olympic decision lends support to our interpretation 
of the exclusion. In reaching its holding, the Olympic court relied, at 
least in part, on its perception that breach of contract claims generally are 
not covered absent tort liability. The court noted in its opinion that the 
general terms of the policy applied only to liability imposed by law for torts, 
and not to damages for breach of contract. Id. at 
1012. Thus, “[t]he contractual liability exclusion functions to relieve 
the insurer of responsibility for any ‘extra’ liability that the insured 
undertakes by contract beyond the liability imposed by law for negligence.” 
Id. at 1011 n.6. Moreover, the lessee in 
Olympic had a separate contractual liability policy listing specific 
contracts that were included in coverage, but the separate policy did not apply 
to the lease covenant because it did not list the covenant. A similar situation 
exists here: the policy did not have an endorsement adding Gilbert’s contract 
with DART as an insured contract.
            
We disagree, by and large, with courts’ and treatises’ conclusions that 
the language of the contractual liability exclusion before us applies only to 
indemnity or hold-harmless agreements for the reasons mentioned above. Texas 
insurance policy interpretation principles emphasize a policy’s plain language 
in determining its intended coverage. See, e.g., Lamar Homes, 242 
S.W.3d at 14 (stating in regard to a CGL policy that coverage for a particular 
risk “depends, as it always has, on the policy’s language, and thus is subject 
to change when the terms of the policy change”); Fortis Benefits, 234 
S.W.3d at 647 (noting that insurance contract rights arise from the insurance 
contract language); Fiess, 202 S.W.3d at 753 
(“For more than a century this Court has held that in construing insurance 
policies ‘where the language is plain and unambiguous, courts must enforce the 
contract as made by the parties, and cannot make a new contract for them, nor 
change that which they have made under the guise of construction.’”) (quoting 
E. Tex. Fire Ins. Co. v. Kempner, 27 S.W. 122, 122 (Tex. 1894)); but 
see Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938-39 (Tex. 1984) 
(holding that an aviation insurance policy’s failure to include a causal 
connection requirement between the breach of the policy and the accident 
violated Texas public policy). We hold that the exclusion means what it says. It 
applies when the insured assumes liability for bodily injury or property damages 
by means of contract unless an exception to the exclusion brings a claim back 
into coverage.
4. Lamar 
Homes
            
Gilbert argues that to adopt Underwriters’ interpretation of the 
exclusion “effectively eviscerates” our decision in Lamar Homes. In 
Lamar Homes, we said a breach of contract can constitute an occurrence 
that causes property damage, thus bringing some breach of contract claims within 
the general grant of coverage for purposes of determining a duty to defend. 
Lamar Homes, 242 S.W.3d at 13. We explained that 
“the label attached to the cause of action—whether it be tort, contract, or warranty—does not determine the duty to 
defend” and that “any preconceived notion that a CGL policy is only for tort 
liability must yield to the policy’s actual language.” Id. Gilbert 
contends that if the exclusion in Underwriters’ policy can operate to exclude 
general breach of contract claims, then our opinion in Lamar Homes would 
not have been necessary. Underwriters counters that our 
Lamar Homes decision did not interpret the exclusion but instead dealt 
with whether unintended construction defects could constitute an accident that 
would fall within the definition of an occurrence in the CGL policy’s general 
grant of coverage.
            
We disagree that our interpretation of the exclusion in the policy runs 
afoul of our decision in Lamar Homes. The contractual liability exclusion 
was not at issue in Lamar Homes. There we considered whether property 
damage to a house that resulted from construction defects could nevertheless 
come within the general terms of liability coverage because the damage resulted 
from an occurrence as defined by the CGL policy. See id. at 10 (“The CGL’s insuring agreement grants the insured broad 
coverage for property damage and bodily injury liability, which is then narrowed 
by exclusions that ‘restrict and shape the coverage otherwise afforded.’”) 
(quoting Weedo v. 
Stone-E-Brick, Inc., 405 A.2d 788, 790 (N.J. 1979)). Whether a claim 
triggers an insurer’s duty to defend and whether a claim eventually is covered 
or excluded for purposes of indemnity are different questions. See D.R. 
Horton-Tex., Ltd. v. Markel Int’l Ins. Co., 300 S.W.3d 740, 743 (Tex. 2009) 
(observing that “the duty to defend and the duty to indemnify ‘are distinct and 
separate duties’”) (quoting Utica Nat’l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 203 (Tex. 2004)). 
In Lamar Homes, we did not address the duty to indemnify, but rather the 
separate duty to defend. An insurer’s duty to defend is determined under the 
eight-corners doctrine, while the duty to indemnify is 
determined by the facts as they are established in the underlying suit. Id. at 744 (quoting Pine Oak Builders, Inc. 
v. Great Am. Lloyds Ins. Co., 279 S.W.3d 650, 656 (Tex. 2009)). 
Here, the facts demonstrate that Gilbert settled RTR’s breach of contract claim 
after the trial court granted judgment in Gilbert’s favor on all theories of 
liability besides the contractual one, and Gilbert does not contend the trial 
court erred in granting summary judgment on these other theories. Thus, 
Gilbert’s liability to RTR falls within the policy’s contractual exclusion for 
purposes of determining Underwriters’ duty to indemnify.
5. 
Ambiguity
            
Gilbert argues that even if we hold the exclusion applies to the facts of 
this case, the exclusion is ambiguous and we must interpret it in favor of 
coverage. According to Gilbert, the exclusion could apply to general breach of 
contract claims or it could only apply to contracts for indemnity, 
depending on one’s interpretation. Underwriters counters that the exclusion is 
unambiguous.
            
Terms in insurance policies that are subject to more than one reasonable 
construction are interpreted in favor of coverage. Comsys, 130 S.W.3d at 194; Evergreen Nat’l Indem. Co. v. Tan It All, Inc., 111 S.W.3d 669, 676 (Tex. App.—Austin 2003, no 
pet.). “Where an ambiguity involves an exclusionary provision 
of an insurance policy, we ‘must adopt the construction . . . urged by the 
insured as long as that construction is not unreasonable, even if the 
construction urged by the insurer appears to be more reasonable or a more 
accurate reflection of the parties’ intent.’” Balandran v. Safeco Ins. Co. of Am., 972 
S.W.2d 738, 741 (Tex. 1998) (quoting Nat’l Union Fire Ins. Co. of Pittsburg, 
Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991)). But an ambiguity 
does not exist simply because the parties interpret a policy differently. See 
Am. Mfrs. Mut. Ins. Co. v. 
Schaefer, 124 S.W.3d 154, 157 (Tex. 
2003). If a contract as written can be given a clear and 
definite legal meaning, then it is not ambiguous as a matter of law. Progressive County Mut. 
Ins. Co. v. Sink, 107 S.W.3d 
547, 551 (Tex. 2003); Grain Dealers Mut. 
Ins. Co. v. McKee, 943 S.W.2d 
455, 458 (Tex. 1997).
            
We agree with Underwriters that the exclusion is not ambiguous. The 
exclusion is straightforward and not reasonably subject to two interpretations. 
It applies to liabilities the insured assumes by contract or agreement and not 
just to a particular subset of liabilities such as indemnity contracts. As 
discussed above, interpreting the exclusion as narrowly as Gilbert urges would 
yield a circular reading when the exclusion is considered in context with the 
insured-contract exception to the exclusion. In order to interpret the policy in 
a manner that harmonizes and gives effect to all provisions so that none are 
meaningless, Underwriters’ interpretation is the only reasonable interpretation. 
See MCI Telecomms. Corp., 995 
S.W.2d at 652.
D. Second 
Exception to the Exclusion
            
Gilbert next argues that the second exception to the exclusion brings 
RTR’s claim back into coverage. The second exception provides that the exclusion 
“does not apply to liability for damages . . . [t]hat 
the insured would have in the absence of the contract or agreement.” Gilbert 
urges that (1) in the absence of its contract with DART, Gilbert would have been 
liable to RTR in tort because without the contract Gilbert would not have 
enjoyed governmental immunity status; (2) to hold otherwise would defeat the 
purpose of CGL coverage because there would not be coverage when there are 
multiple causes of action and the tort claim is dismissed for some reason; and 
(3) the exception must be construed broadly in favor of coverage. Underwriters 
counters that the duty to indemnify is based on the actual facts proven and 
adjudicated liability, and the only liability theory remaining when Gilbert 
settled with RTR was the breach of contract claim. We agree with 
Underwriters.
            
As the court of appeals observed, it is well settled that “a claim based 
on a contract that provides indemnification from liability does not accrue until 
the indemnitee’s liability becomes fixed and certain.” 
245 S.W.3d at 35 (quoting Ingersoll-Rand Co. v. Valero Energy Corp., 997 
S.W.2d 203, 205 (Tex. 1999)); Hartrick v. 
Great Am. Lloyds Ins. Co., 62 
S.W.3d 270, 275 (Tex. App.—Houston [1st Dist.] 2001, no pet.) 
(“[T]he duty to indemnify arises from proven, adjudicated facts.”); S. County 
Mut. Ins. Co. v. Ochoa, 19 S.W.3d 452, 460 (Tex. App.—Corpus Christi 2000, 
no pet.) (“An insurer is not obligated to pay a liability 
claim until its insured has been adjudicated to be legally responsible.”); 
Tex. Prop. & Cas. Ins. 
Guar. Ass’n v. Boy Scouts of Am., 947 S.W.2d 682, 
691 (Tex. App.—Austin 1997, no writ) (stating that the insurer becomes legally 
obligated to pay claims once the obligation is fixed by judgment or settlement 
contract).
            
While this case involves a policy exception, not an indemnity provision 
as in the cases referenced above, the contract language similarly guides our 
analysis. See Ingersoll-Rand, 997 S.W.2d at 207. 
As modified by the second exception, the exclusion precludes the insurer’s 
liability for indemnity if the insured is obligated to pay only because of its 
contractually assumed liability. If the insured’s liability is because of an 
otherwise covered basis in addition to its contractually-assumed liability, the 
second exception brings the claim back into coverage. See Sw. Bell Tel. Co. 
v. DeLanney, 809 S.W.2d 493, 494-95 (Tex. 1991) 
(recognizing that tort obligations are imposed by law independent of contractual 
obligations, but the acts of a party may simultaneously breach duties in tort 
and contract); Cagle v. Commercial Standard Ins. Co., 427 S.W.2d 939, 
943-44 (Tex. Civ. App.—Austin 1968, no writ) (“[W]here the express contract 
actually adds nothing to the insured’s liability, the contractual liability 
exclusion clause is not applicable, but where insured’s liability would not 
exist except for the express contract, the contractual liability clause relieves 
the insurer of liability.”). Therefore, to determine whether the exception 
applies, we must decide whether Gilbert proved it would have had liability for 
RTR’s damages absent its contractual undertaking. See Comsys, 130 S.W.3d at 193.
            
Gilbert asserts that if no contract existed in the first place, it would 
not have had immunity and RTR’s negligence claim against Gilbert would not have 
been subject to an immunity defense. Assuming, without deciding, that Gilbert is 
correct, the argument misses the mark. The determination of an indemnity 
obligation is based on the actual facts of the case as proven and the language 
of the indemnity agreement. Here, the existence of the contract between Gilbert 
and DART was merely an underlying fact that was to be considered in determining 
Underwriters’ indemnity obligation. See Ingersoll-Rand, 
997 S.W.2d at 208 (noting that an indemnification cause of action accrues when 
the indemnitee’s liability becomes fixed and 
certain). Because RTR’s tort claims were properly dismissed, the only 
viable claim underlying Gilbert’s settlement was for breach of contract. Gilbert 
asserts no other basis for its settlement than the breach of contract claim; 
thus, Gilbert’s settlement payment for which it seeks indemnity simply was not a 
liability for damages it had apart from its contract with DART, as it must have 
been in order for the second exception to apply.
            
Gilbert correctly argues that our decisions require us to interpret an 
exception to an exclusion broadly in favor of coverage. 
See Evanston Ins. Co. v. ATOFINA Petrochems., Inc., 256 
S.W.3d 660, 668 (Tex. 2008). But that principle does not mean we should distort 
the exception in order to find coverage where none exists. Gilbert would have us 
disregard the actual facts underlying its settlement and hold that the exception 
applies even to potential liability that Gilbert might have had if it had 
not entered into a contract with DART. We decline to do so. Indemnity under a 
liability policy depends on actual facts and adjudicated liability, not possible 
scenarios that did not occur.
            
Gilbert also argues that interpreting the exception to apply only to 
actual proven facts and adjudicated liability will bar coverage anytime a tort 
claim is dismissed during litigation and a contractual 
claim remains—for example, where a tort claim is dismissed based on a statute of 
limitations defense but a breach of contract claim remains. We understand 
Gilbert’s concerns, but speculation about coverage of insurance policies based 
on surmised factual scenarios is a risky business because small alterations in 
the facts can warrant completely different conclusions as to coverage. It is 
proper that we await a fully developed, actual case to decide an issue not 
presented here. We note, however, as did the court of appeals, that it is common 
for insurance coverage determinations to depend on the final basis for the 
insured’s liability. 245 S.W.3d at 35. For example, 
when a claim alleges that an insured caused damages by both negligent and 
intentional conduct, “a judgment based upon [negligent] conduct often triggers 
the duty to indemnify, while a judgment based on [intentional conduct] usually 
establishes the lack of a duty.” Farmers Tex. County Mut. Ins. Co. v. 
Griffin, 955 S.W.2d 81, 84 (Tex. 
1997).
            
Finally, contrary to Gilbert’s assertions, to hold that the second 
exception does not apply here does not run afoul of our decision in Lamar 
Homes, in which we said that a cause of action’s label does not determine 
whether an insurer has a duty to defend. See Lamar Homes, 242 S.W.3d at 13. The second exception contemplates a 
situation in which an insured’s liability for damages results from matters that 
are within the policy’s coverage in addition to or in lieu of the insured’s 
contractually-assumed liability, but it does not prescribe whether the covered 
liability must be based in contract or tort. Moreover, Lamar Homes 
concerned a duty to defend rather than a duty to indemnify. These are separate 
duties and are determined differently. D.R. Horton-Tex., Ltd., 300 S.W.3d 
at 744 n.2 (“In contrast [to the duty to defend], the duty to indemnify arises 
only once liability has been conclusively determined.”) (quoting 14 Lee R. 
Russ & Thomas F. Segalla, Couch on insurance § 200:3 (3d ed. 
2009)).
            
The exception for liability for damages Gilbert would have in the absence 
of the DART contract is inapplicable where, as here, the insured has 
governmental immunity and liability is based on its contractual undertaking. If 
particular relationships of the parties, their contracts, and applicable legal 
principles create unusual circumstances, as they do here, it is incumbent on the 
parties to take those relationships, circumstances, and applicable legal 
principles into account when entering into contracts and insurance agreements. 
If we held as Gilbert proposes, we would be remaking the parties’ insurance 
agreement. We decline to do so.[11]
E. Estoppel
            
Finally, Gilbert argues that if we determine no coverage exists under the 
policy, Gilbert is entitled to recover under an estoppel theory because Underwriters assumed control of 
Gilbert’s defense and prejudiced Gilbert as a result. Underwriters responds that 
(1) Gilbert waived the issue because it did not raise it in the court of 
appeals, and (2) Underwriters did not assume Gilbert’s defense, and Gilbert was 
not prejudiced by Underwriters’ actions in regard to defense of the claim. We 
first address the procedural question.
            
In the court of appeals, Gilbert argued that coverage existed by virtue 
of waiver and estoppel. After the court of appeals 
released its decision, we overruled cases on which Gilbert relied and held that 
the doctrine of estoppel may not be used to create 
insurance coverage where none exists under the policy. Ulico, 262 S.W.3d at 780. 
Following our decision in Ulico, Gilbert 
reframed its argument to argue that it is entitled to damages by virtue of estoppel. Our rules provide that a case may be remanded for 
further proceedings in light of changes in the law. Tex. R. App. P. 60.2(f). However, an analysis 
pursuant to our Ulico opinion is substantively 
the same as that undertaken by the court of appeals in addressing Gilbert’s 
estoppel issue: a determination must be made as to 
whether Underwriters assumed control of Gilbert’s defense and is estopped to refuse to pay damages Gilbert suffered because 
of Underwriters’ actions. We see no need to remand the case to allow the court 
of appeals to consider an argument it has effectively already considered. In 
light of the unusual circumstances, we conclude that Gilbert is entitled to make 
its estoppel argument, so we will consider its merits. 
See Westgate, Ltd. v. State, 843 S.W.2d 448, 455 (Tex. 
1992).
            
In Ulico, we explained the estoppel doctrine as it relates to coverage when an insurer 
assumes an insured’s defense:
 
[I]f an insurer defends its insured when no coverage for 
the risk exists, the insurer’s policy is not expanded 
to cover the risk simply because the insurer assumes control of the lawsuit 
defense. But, if the insurer’s actions prejudice the insured, the lack of 
coverage does not preclude the insured from asserting an estoppel theory to recover for any damages it sustains 
because of the insurer’s actions.
 
Ulico, 262 S.W.3d at 
787.
            
Gilbert argues that several facts in the record demonstrate Underwriters 
assumed control of its defense and Gilbert was prejudiced by Underwriters’ 
actions. Gilbert alleges that Underwriters failed to reserve its rights on the 
contractual liability exclusion and yet urged Gilbert’s counsel in RTR’s suit, 
James Grau, to move for summary judgment on the basis 
of governmental immunity even though Underwriters intended to deny coverage on 
the basis of the exclusion if the governmental immunity defense was successful. 
Gilbert contends Underwriters informed Gilbert that (1) Underwriters intended to 
become more actively involved in the case and independently evaluate the 
governmental immunity issue and (2) Underwriters did not believe the case should 
be mediated until the trial court ruled on the summary-judgment motions. Gilbert 
alleges both positions demonstrate Underwriters’ control of Gilbert’s defense. 
Grau testified that he was pressured by Underwriters’ 
counsel to move for summary judgment on the governmental immunity issue and he 
believed that if he did not move forward with the motion, Underwriters would 
invoke the cooperation clause to deny coverage. Gilbert additionally points to 
Underwriters’ internal communications dated more than seventeen months before it 
denied coverage. It says those comments imply there should be no coverage under 
the policy for breach of contract. Gilbert contends it was prejudiced because 
Underwriters informed Gilbert that if Gilbert decided not to present the 
summary-judgment motion, Underwriters would deny coverage under the cooperation 
clause, yet secretly knew if Gilbert successfully presented the summary-judgment 
motion, Underwriters would deny coverage. We agree with the court of appeals 
that Underwriters did not assume Gilbert’s defense and, even if it had, Gilbert 
was not prejudiced by Underwriters’ actions.
            
First, the fact Underwriters allegedly threatened Gilbert by stating that 
Gilbert’s failure to assert governmental immunity would be a breach of the 
policy’s cooperation clause does not rise to the level of actually assuming 
control of Gilbert’s defense. Although Underwriters did not have a duty to 
defend Gilbert under the excess policies, it had the right “to associate with 
the Insured or the Insured’s Underlying Insurers, or both, in the defense and 
control of any claim, suit or proceedings relative to an occurrence where the 
claim or suit involves, or appears reasonably likely to involve Underwriters in 
which event the Insured and Underwriters shall co-operate in all things in the 
defense of such claim, suit or proceeding.” Thus, Underwriters had the 
contractual right to associate with Gilbert and Argonaut in defending RTR’s 
claim. Underwriters also had the right to stand on the cooperation clause in its 
policy. Gilbert was represented by counsel independent from Underwriters and had 
the right to refuse to assert governmental immunity and litigate or else settle 
RTR’s claim. Either way it could afterward seek recovery for the excess judgment 
or settlement from Underwriters. Underwriters’ disclosure of its intent to stand 
on contractual rights in its policy does not equate with asserting actual 
control over Gilbert’s defense.
            
Second, even though Underwriters did not expressly mention the 
contractual liability exclusion in its initial reservation of rights letters, it 
disclosed its belief that a claim for breach of contract was potentially not 
covered and that a potential conflict of interest existed between it and 
Gilbert. Thus, Gilbert was on notice early in the case that Underwriters 
questioned whether a breach of contract claim was covered. There is nothing in 
Underwriters’ internal communications that was not in substance communicated to 
Gilbert in the reservation of rights letters.
            
Third, Gilbert’s defense counsel, Grau, 
testified that he raised the issue of governmental immunity in Gilbert’s 
original answer to RTR’s claim, and the answer was filed before Grau had contact with Underwriters or its coverage counsel. 
Grau asserted the defense of governmental immunity on 
Gilbert’s behalf because he “believe[d] that it applied.” Thus, Grau independently raised this issue without any prompting 
from Underwriters.
            
Further, even if Underwriters had assumed control of Gilbert’s defense, 
Gilbert has not shown it was prejudiced by Underwriters’ actions. Gilbert relies 
on our decision in Employers Cas. Co. v. Tilley, 496 S.W.2d 552 (Tex. 1973), to support its claims 
of prejudice. In Tilley, the insurer retained and 
assigned an attorney to defend the insured in the underlying suit. Id. at 554. The insurer did not reserve its rights to 
deny coverage for the claim or advise its insured that 
the insurer had a conflict of interest with the insured as to coverage. 
Id. Nor did the attorney advise the insured that he had a conflict of 
interest because he was simultaneously defending the insured and gathering 
coverage information favorable to the insurer. Id. The insurer later 
denied coverage, largely on the basis of evidence developed by the attorney 
while the attorney was defending the insured on the claim. Id. This Court 
held the insurer was estopped from denying coverage. 
Id. at 561.
            
The facts of this case are not similar to those present in Tilley. 
First, Underwriters did not have a duty to defend Gilbert and did not retain and 
assign Gilbert’s defense attorney, and Gilbert does not claim that its defense 
attorney simultaneously defended Gilbert and represented Underwriters in regard 
to coverage. Next, the other contractors involved in RTR’s suit, as well as 
Gilbert, moved for summary judgment on governmental immunity grounds. An 
attorney for Gilbert’s parent company acknowledged it likely would not have 
mattered whether Gilbert raised the issue of governmental immunity because the 
trial court ruled that governmental immunity extended to all the contractors in 
the case, but in any event Gilbert’s attorney raised governmental immunity 
without consultation with Underwriters. Third, these facts do not show that 
Underwriters improperly coerced Gilbert into pursuing summary judgment on 
governmental immunity grounds. Underwriters acted within its contractual rights 
by associating in Gilbert’s defense and alerting Gilbert to the issue 
Underwriters believed would be presented under the policy’s cooperation clause 
if a legally valid defense existed but was not urged by Gilbert. Finally, unlike 
the insurer in Tilley, Underwriters provided Gilbert with reservation of 
rights letters putting Gilbert on notice of a potential conflict of interest 
between Gilbert and Underwriters.
            
In sum, the court of appeals did not err in determining there was not a 
fact issue as to Gilbert’s estoppel claim.
III. 
CONCLUSION
            
We agree with the court of appeals that the trial court (1) erred in 
granting Gilbert’s motion for summary judgment on the issue of coverage and (2) 
correctly granted Underwriters’ motion for summary judgment on the issue of 
estoppel. We affirm the court of appeals’ 
judgment.
 
 
 
 
 
                                                                        
________________________________________
                                                                        
Phil Johnson
                                                                        
Justice
 
OPINION DELIVERED: June 4, 2010







[1] Various 
interveners eventually joined the suit, including RTR’s property insurers and 
persons who had offices in the flooded building.

[2] 
Underwriters’ policies generally followed form, meaning the policies 
tracked the essential terms of the primary policy. Underwriters’ policies also 
had separate provisions and exclusions applicable to the excess policies. We 
will generally refer to Underwriters’ policies collectively as “the policy” for 
ease of reference. Because our analysis focuses on provisions found in the 
primary policy, the policy language we reference, unless specifically noted 
otherwise, will be that of Argonaut’s primary policy, which is incorporated by 
Underwriters’ policy.

[3] The 
policies were underwritten and risks participated in by various Members of the 
Lloyd’s market and individual insurance companies. The underwriters and 
participating insurers will be referred to collectively as 
“Underwriters.”

[4] The 
State has sovereign immunity and subdivisions have what is called governmental 
immunity. The parties refer to DART’s immunity and that of Gilbert, as DART’s 
contractor, as sovereign immunity. However, we will use the term “governmental 
immunity” throughout this opinion as that is the proper terminology.

[5] 
Underwriters also asserted issues the court of appeals did not reach: (1) 
an exclusion in the excess policy bars coverage for breach of contract; (2) 
RTR’s claim did not involve a covered occurrence resulting in liability for 
which Gilbert was obligated to pay damages; and (3) Gilbert lacked a reasonable 
basis for settling RTR’s claim when there was no potential liability or basis 
for a judgment against Gilbert. In this Court, Underwriters argues those issues 
warrant remand to the court of appeals in the event we reverse. Because we 
affirm the court of appeals’ judgment, we do not reach the remand 
issues.

[6] The ISO 
is an insurance industry organization which drafts standard forms used by 
insurers. See Lamar Homes, 242 S.W.3d at 5 
n.1.

[7] In its 
post-submission brief, Gilbert notes that some insurance policies include an 
express breach of contract exclusion in Coverage A of the policy. This, 
according to Gilbert, is further evidence that the contractual liability 
exclusion is not intended to exclude general breach of contract claims. We are 
not persuaded by the argument because the policy we are interpreting does not 
include such language in Coverage A, and each policy 
must be interpreted according to its own specific provisions and coverages.

[8] See, e.g., Ferrell v. W. Bend Mut. Ins. Co., 393 F.3d 786, 795 (8th Cir. 
2005) (suggesting exclusion applies only where insured assumes liability of a 
third party); Federated Mut. Ins. Co. v. Grapevine 
Excavation Inc., 197 F.3d 720, 726 (5th Cir. 2000) (the insured was not sued 
as the contractual indemnitor of a third party’s 
conduct but rather for its own conduct, so the contractual liability exclusion 
was inapplicable); Olympic, Inc. v. Providence Wash. Ins. Co., 648 P.2d 
1008, 1011 (Alaska 1982) (“‘Liability assumed by the insured under any contract’ 
refers to liability incurred when one promises to indemnify or hold harmless 
another, and does not refer to the liability that results from breach of 
contract.”); ACUITY v. Burd & Smith Constr., 
Inc., 721 N.W.2d 33, 40 (N.D. 2006) (liability assumed by the insured in a 
CGL policy is “generally understood and interpreted by the courts to mean the 
liability of another which one ‘assumes’ in the sense that one agrees to 
indemnify or hold the other person harmless”); Gibbs M. Smith, Inc. v. U.S. 
Fid. & Guar. Co., 949 P.2d 337, 341 (Utah 1997) (“Courts have over and 
over again interpreted the phrase ‘liability assumed by the insured under any 
contract’ to apply only to indemnification and hold-harmless agreements, whereby 
the insured agrees to ‘assume’ the tort liability of another.”); Am. Family 
Mut. Ins. Co., 673 N.W.2d at 70 (Wis. 2004) 
(contractually-assumed liability clause excludes coverage for liability “where 
the insured has contractually assumed the liability of another, as in an 
indemnification or hold-harmless agreement”); 4 Phillip L. Bruner & Patrick J. 
O’Connor, Bruner and O’Connor on 
Construction Law § 11:109 (2010) (criticizing the court of appeals’ 
judgment in this case and observing that the exclusion addresses “situations 
where the insured assumes the liability of another and, as a consequence, the 
insurer is placed in the position of extending coverage to a third party’s 
liabilities for which the insurer performed no underwriting. In other words, the 
exclusion applies to the ‘assumed’ liability of another, not one’s own liability 
due to a contractual undertaking.”); C.T. Drechsler, 
Annotation, Scope and Effect of Clause in Liability Policy Excluding from 
Coverage Liability Assumed by Insured Under Contract Not Defined In Policy, Such 
as One of Indemnity, 63 A.L.R.2d 1122 (2009) (“[T]he contractual liability 
exclusion clause is not effective primarily in the two following situations: (1) 
where the insured is the one who is solely responsible for the injury, and (2) 
where the insured is the actively negligent wrongdoer.”); 21 Eric Mills Holmes, Holmes’ Appleman on 
Insurance § 132.3, 36-40 (2d ed. 1996) (noting that the contractual 
liability exclusion clause refers to the assumption of another’s liability as in 
an indemnity agreement); 2 Rowland H. 
Long, The Law of Liability 
Insurance § 10.05[2], 10-61 (1st ed. 2006) (“Although it could be argued 
that one assumes liability (i.e., a duty of performance, the breach of 
which will give rise to liability) whenever one enters into a binding contract, 
in the CGL policy and other liability policies an ‘assumed’ liability is 
generally understood and interpreted by the courts to mean the liability of 
another which one ‘assumes’ in the sense that one agrees to indemnify or 
hold the other person harmless therefor.”); 1 Barry R. Ostrager & Thomas R. 
Newman, Handbook on Insurance 
Coverage Disputes § 7.05, 546 (14th ed. 2008) (“[C]ourts have consistently interpreted the phrase ‘liability 
assumed by the insured under any contract’ to apply only to indemnification and 
hold-harmless agreements, whereby the insured agrees to ‘assume’ the tort 
liability of another. This phrase does not refer to the insured’s breaches of 
its own contracts.”); 2 Jeffrey W. 
Stempel, Stempel on Insurance 
Contracts § 14.14 (3d ed. 2006 & Supp. 2009) (“The CGL coverage for a 
policyholder’s liability assumed by contract ‘refers to liability incurred when 
one promises to indemnify or hold harmless another, and does not refer to 
liability that results from breach of contract.’”) (quoting Olympic, 648 P.2d at 1011).

[9] See, e.g., Nationwide Mut. Ins. Co. v. CPB Int’l 
Inc., No. 3:06-CV-0363, 2007 WL 4198173, at *8 
(M.D.Pa. Nov. 26, 2007) (“Exclusion 
(b) is simply further clarification in the policy that contract-based claims are 
not covered.”); CIM Ins. Corp. v. Midpac Auto Ctr., 
Inc., 108 F.Supp.2d 1092, 1099-1100 (D.Haw. 2000) 
(clause in policy stating that policy does not apply to liability assumed under 
any contract or agreement means that any claim that is dependent on the 
existence of an underlying contract is not covered); Monticello Ins. Co. v. 
Dismas Charities, Inc., No. 3:96CV-550-S, 1998 WL 
1969611, at *2 (W.D.Ky. Apr. 3, 1998) (exclusion for 
liability assumed by the insured under any contract or agreement does not arise 
only when a party assumes the liability for another party; rather, the plain 
meaning of the policy excludes a breach of contract claim from coverage); 
Silk v. Flat Top Constr., Inc., 453 S.E.2d 356, 359 (W.Va. 1994) 
(exclusion removed coverage for breach of contract); TGA Dev., Inc. v. N. 
Ins. Co. of N.Y., 62 F.3d 1089, 1091-92 (8th Cir. 1995) (exclusion for which 
the insured has assumed liability in a contract or agreement plainly excluded 
coverage for contractual claims and not just hold-harmless or indemnity 
agreements); but see Ferrell, 393 F.3d at 795 (without overruling or 
mentioning TGA Development, holding that the contractual liability 
exclusion applies only to situations where the insured has contractually assumed 
a third party’s liability, such as in an indemnification or hold-harmless 
agreement).

[10] Prior 
to 1986, the CGL policy was called the Comprehensive General Liability Insurance 
Policy.

[11] 
Underwriters raises additional arguments which we need not address. 
First, Underwriters asserts that Gilbert was not cloaked with governmental 
immunity based on the DART contract per se, but based on Gilbert’s status as a 
governmental contractor and its performance of specific governmental functions. 
See Tex. Transp. Code § 
452.056(d) (“A private operator who contracts with an authority under this 
chapter is not a public entity for purposes of any law of this state except that 
an independent contractor of the authority that . . . performs a function of the 
authority or an entity . . . that is created to provide transportation services 
is liable for damages only to the extent that the authority or entity would be 
liable if the authority or entity were performing the function . . . .”). Our 
holding precludes the need to determine whether Gilbert would have had immunity 
under the statute even in the absence of a contract, and we express no opinion 
on the question. Second, Underwriters argues that although its policy is a 
following-form policy generally, a separate exclusion in the excess policy bars 
coverage for “the failure of the Insured to complete a contract on time or to 
comply with any contractual obligations.” Because we hold that the contractual 
liability exclusion in the underlying primary policy bars coverage for RTR’s 
claim and exceptions to the exclusion do not bring the claim back into coverage, 
we do not reach the issue of the separate contractual exclusion in the excess 
policy.