**UNDERWRITERS AT LLOYD'S OF LONDON, Appellant,**

v.

**GILBERT TEXAS CONSTRUCTION, L.P., Appellee.**

No. 05–05–01686–CV.

Court of Appeals of Texas, Dallas.

Dec. 19, 2007.

summary judgment in favor of Underwriters on Gilbert's causes of action for waiver and estoppel as well as its extra-contractual claims for fraud, misrepresentation, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act. We conclude there was no coverage under the excess insurance policies issued by Underwriters due to a policy exclusion for the assumption by the insured of liability under contract or agreement. Accordingly, we reverse the trial court's judgment in part and render judgment in favor of Underwriters on the issue of coverage and breach of the insurance contracts. We affirm the trial court's judgment on the remaining claims.

## I.

A brief overview of the facts in this case follows. In 1993, the Dallas Area Rapid Transit Authority hired Gilbert Texas Construction, L.P., as a general contractor in connection with the construction of a commuter rail system. DART and Gilbert entered into a contract outlining their respective responsibilities. At issue here are the portions of the contract setting forth Gilbert's responsibilities with respect to inspection and maintenance of the construction areas and the protection of property belonging to third parties.

The contract between DART and Gilbert specified that Gilbert had "investigated and satisfied itself as to the general and local conditions ... including, but not limited to uncertainties of weather, flooding patterns and water drainage, or similar physical conditions at the site." The contract required Gilbert to "at all times keep the work area, including storage areas, free from accumulations of waste materials. . . ." The contract also required Gilbert to "preserve and protect all structures ... on or adjacent to the work site ..." as well as "protect from damage all existing

Glenn Richard Legge, Alexander Christos Papandreou, Legge Farrow Kimmitt McGrath & Brown, LLP, Karen A. Conticello, Houston, for appellant.

Andrew Todd McKinney, McKinney & Cooper, L.L.P., Houston, for appellee

Before Justices MORRIS, FRANCIS, and MAZZANT.

## OPINION

Opinion by Justice MORRIS.

This is a summary judgment case involving certain excess general liability insurance policies. The controlling issue we decide is whether there is coverage under the policies for damages allegedly caused by the insured's breach of a contractual duty. Underwriters at Lloyd's of London contends the trial court erred in granting summary judgment in favor of its insured, Gilbert Texas Construction, L.P., on the issue of coverage and breach of the insurance contracts. Gilbert cross-appeals contending the trial court erred in granting

improvements and utilities (1) at or near the work site and (2) on adjacent property of a third party. . . ." Finally, the contract stated it was Gilbert's responsibility to "repair any damage to those facilities, including those that are the property of a third party, resulting from failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work."

On May 5, 1995, heavy rains occurred in Dallas. At that time, Gilbert was preparing the area in front of a complex of buildings owned by RT Realty, L.P. for the installation of rail lines. According to RT Realty, DART and Gilbert had implemented a "storm water pollution prevention plan" limiting the capacity of the storm water drainage inlets in the area around its buildings. In addition, DART and Gilbert allegedly left large piles of dirt, barricades, temporary structures, and construction debris in the area that channeled and diverted the rain water toward RT Realty's buildings. The allegedly diverted rain water caused substantial flooding and damage to RT Realty's property.

RT Realty brought suit against DART, Gilbert, and others alleging claims including violations of the Texas Transportation Code, violations of the Texas Water Code, nuisance, and trespass. RT Realty also asserted that it was a third-party beneficiary of the contract between DART and Gilbert and that it was damaged by Gilbert's breach of the terms of that contract. Gilbert answered and asserted the defense of governmental immunity based on its status as a contractor working for DART. Gilbert's primary insurer, Argonaut Insurance Company, defended Gilbert in the litigation.

Underwriters at Lloyd's of London was Gilbert's excess insurance carrier. Gilbert notified Underwriters of the RT Realty suit and requested indemnification for any damages it might be ordered to pay. Underwriters sent several "reservation of rights" letters to Gilbert outlining its position on indemnity coverage for the RT Realty suit. With respect to the breach of contract claim, Underwriters questioned whether the cause of action was for a covered "occurrence" as defined by the policies.

Gilbert moved for summary judgment asserting lack of subject matter jurisdiction by virtue of governmental immunity. The trial court concluded RT Realty failed to state tort claims that fell within the limited waiver of governmental immunity permitted by the Texas Tort Claims Act. Accordingly, the trial court signed an order granting Gilbert's motion for summary judgment based on immunity and dismissed all claims alleged against Gilbert with the exception of the breach of contract claims.

Approximately three weeks after the trial court dismissed RT Realty's tort claims against Gilbert, Underwriters sent Gilbert a new reservation of rights letter addressing the breach of contract claims specifically. In the letter, Underwriters took the position there was "no coverage for the breach of contract claims against Gilbert" because (1) the primary policy had an exclusion for property damage for which the insured is obligated to pay damages because of the assumption of liability in a contract or agreement, (2) the excess policy excludes coverage for failure to perform obligations under a contract, (3) the excess policy covers only tort liability, not liability for breach of contract, and (4) breach of contract does not constitute a covered "occurrence." Gilbert settled the breach of contract claim with RT Realty, and Underwriters refused to indemnify Gilbert for any portion of the damages Gilbert paid.

Gilbert brought this action against Underwriters and others alleging claims for

breach of contract and violations of articles 21.21 and 21.55 of the Texas Insurance Code. Gilbert also alleged fraud, misrepresentation, waiver, and estoppel. Gilbert and Underwriters filed cross-motions for summary judgment on the issue of coverage and the breach of contract claim. The trial court denied Underwriters' motion and granted Gilbert's motion concluding there was coverage under the excess policies. The trial court awarded Gilbert damages in the amount Gilbert paid RT Realty to settle the claims in the underlying suit. Gilbert also recovered attorney's fees, pre-judgment interest, and post-judgment interest. With respect to the remaining claims, however, the trial court granted summary judgment in favor of Underwriters and dismissed Gilbert's claims for violations of articles 21.21 and 21.55, fraud, misrepresentation, waiver, and estoppel.

Underwriters brings this appeal contending the trial court erred in granting summary judgment in favor of Gilbert on the breach of contract claim because there was no coverage under the policies. Underwriters further argues there was no reasonable basis to support Gilbert's settlement with RT Realty because RT Realty's breach of contract claims against Gilbert were not legally viable. Gilbert has cross-appealed contending the trial court erred in granting summary judgment in favor of Underwriters on the claims under articles 21.21 and 21.55. Gilbert also contends the trial court erred in failing to hold that Underwriters waived its policy defenses or is estopped from denying coverage under the policies.

## II.

■ The issue upon which all others in this appeal depend is that of coverage. On cross-motions for summary judgment, the trial court determined the coverage issue in favor of Gilbert. When the trial court grants one motion for summary judgment and denies the other, the reviewing court examines all of the summary judgment evidence, determines all questions presented, and renders the judgment the trial court should have rendered. *See Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex.1999).

■ Here, the cross-motions for summary judgment on coverage focused on whether the excess insurance policies generally provided coverage for breach of contract claims and, if so, whether the contract claims asserted against Gilbert fell within the scope of certain exclusions. In an insurance coverage dispute, the claimant has the initial burden of establishing that its claim comes within the scope of coverage provided by the policy. *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 188 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). The burden then shifts to the insurer to show that the claim falls within a policy exclusion or limitation of coverage. *Crocker v. Am. Nat'l Gen. Ins. Co.*, 211 S.W.3d 928, 931 (Tex.App.-Dallas 2007, no pet.). If the insurer succeeds in showing that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim within coverage. *See Nutmeg Ins. Co. v. Clear Lake City Water Auth.*, 229 F.Supp.2d 668, 676 (S.D.Tex.2002). We assume for the purposes of this opinion that RT Realty's breach of contract claims asserted against Gilbert, and the damages paid by Gilbert to settle those claims, fall within the scope of general coverage provided by the excess policies.[1] We direct our analysis to the

---

1. Otherwise, we express no opinion on the viability or merits of the breach of contract claims made by RT Realty against Gilbert.

effect of one of the exclusions relied upon by Underwriters to deny coverage.

The excess policies issued by Underwriters are "following form" policies and, therefore, provide coverage to the same extent as the primary policy. The primary policy contains an exclusion for "contractually assumed liability." The exclusion states the insurance does not apply to "bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." The contract claims asserted against Gilbert in the underlying suit were based on Gilbert's assumption of liability in its contract with DART to repair property damage to third-party property. On its face, therefore, the exclusion applies to the contract claims brought by RT Realty. Gilbert does not dispute that the contract claims fall within the scope of the exclusion. Gilbert argues instead that an exception to the exclusion provides coverage for the claims.

The contractually assumed liability exclusion has two exceptions. The exclusion does not apply to liability for damages "assumed in a contract or agreement that is an 'insured contract' " or "that the insured would have in the absence of the contract or agreement."[2] Gilbert contends the contract claims asserted against it fit squarely within the second exception. Gilbert argues that, because the liability assumed under the DART contract is no more than restated tort liability, its liability for damages would exist even "in the absence of the contract or agreement."

■■■ It is well settled that the general rules of contract construction apply to the interpretation and construction of insurance contracts. *See Progressive County Mut. Ins. Co. v. Sink,* 107 S.W.3d 547, 551 (Tex.2003). If a contract as written can be given definite and certain legal meaning, then it is unambiguous as a matter of law. *Id.* If, however, the contract is susceptible to more than one reasonable interpretation, it will be interpreted in the manner that most favors coverage. *Id.* Whether a contract is ambiguous is a question of law for the court to decide. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995).

■■■ Both the exclusion relied upon by Underwriters and the exception relied upon by Gilbert are clear and unambiguous as written. The policy excludes from coverage those situations where the insured would not be liable for damages but for the fact that it assumed liability under an express contract. *See Cagle v. Commercial Standard Ins. Co.,* 427 S.W.2d 939, 944 (Tex.Civ.App.-Austin 1968, no writ). Where the contract adds nothing to the insured's liability and the liability assumed under the contract is coextensive with the insured's liability under the law, the exclusion does not apply. *Id.* In this case, although the liability assumed by Gilbert under the contract could be classified as general tort liability, we cannot say that the contract adds nothing to Gilbert's liability under the law. Because the trial court concluded Gilbert was immune from tort liability, its only liability for damages arose by virtue of the liability it assumed under its contract with DART. But for the contract, all claims made by RT Realty against Gilbert would have been barred by

---

**2.** The policies define an "insured contract" in part as "[t]hat part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of 'bodily injury' or 'property damage' to a third person or organi- zation, if the contract or agreement is made prior to the 'bodily injury' or 'property damage.' Tort liability means liability that would be imposed by law in the absence of any contract or agreement."

governmental immunity. Gilbert assumed liability under the contract that it would not have had under the law. The exception, therefore, does not apply. The exclusion bars coverage.

■ Gilbert suggests that we interpret the word "liability" in the phrase "liability for damages" found in the exception to include both adjudicated and unadjudicated liability. Under such an interpretation, Gilbert's alleged tort liability, before it was resolved by adjudication, would be compared to the liability Gilbert assumed under the DART contract for the purpose of determining whether the exception applies. This comparison would render Gilbert's immunity from tort liability of no consequence to the determination of whether the exception applies because Gilbert's potential liability before the resolution of its immunity defense would be sufficient to trigger the exception. The implication of Gilbert's argument is that allegations of liability rather than liability established through judgment or settlement would control the duty to indemnify under the exception. This argument runs contrary to the longstanding rule that "a claim based on a contract that provides indemnification from liability does not accrue until the indemnitee's liability becomes fixed and certain." *See Ingersoll–Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 205 (Tex.1999); *S. County Mut. Ins. Co. v. Ochoa*, 19 S.W.3d 452, 460 (Tex.App.-Corpus Christi 2000, no pet.); *Tex. Prop. and Cas. Ins. Guar. Ass'n v. Boy Scouts of Am.*, 947 S.W.2d 682, 691 (Tex.App.-Austin 1997, no pet.). The establishment of liability is a condition precedent to the insurer's duty to pay, and allegations of liability do not control. *See Ochoa*, 19 S.W.3d at 460. Therefore, Gilbert's argument does not propose a reasonable interpretation of the word "liability."

Underwriters' duty under the policy was to indemnify Gilbert for all damages Gilbert became legally obligated to pay for claims falling within the scope of coverage. In this case, Gilbert's only liability for damages existed because of its contractually assumed liability. Gilbert's immunity from tort liability combined with its liability for the same actions under contract may be a unique circumstance, but that does not make the plain language of the exclusion any less applicable.

■ Gilbert further argues that applying the exclusion creates an irreconcilable conflict of interest between the insurer and the insured because "by successfully asserting an affirmative defense to a tort claim, the heretofore covered contract claim ... ceases to be covered." Yet such conflicts arise frequently in insurance cases, and it is common that insurance coverage depends upon the adjudicated basis for the insured's liability. For example, the successful defense of a claim that an insured acted negligently combined with a finding that he acted intentionally may negate an insurer's duty to indemnify the insured for damages the insured becomes legally obligated to pay. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997). Such a conflict cannot form the basis for coverage where coverage does not exist under the plain language of the policy.

■ As an alternative to finding coverage under the language of the policy, Gilbert contends coverage exists in this case by virtue of waiver and estoppel. Generally, the doctrines of waiver and estoppel cannot be used to create coverage where it does not exist under the terms of the policy. *See Tex. Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602–03 (Tex. 1988). An exception to this rule exists, however, where the insurer "assumes the insured's defense without obtaining a res-

ervation of rights or a non-waiver agreement and with knowledge of facts indicating non-coverage." *See State Farm Lloyds, Inc. v. Williams,* 960 S.W.2d 781, 785 (Tex.App.-Dallas 1997, pet. dism'd by agr.); *Farmers Tex. County Mut. Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 521–22 (Tex. Civ.App.-Austin 1980, writ ref'd n.r.e.). Under those circumstances, policy defenses, including those of non-coverage, are waived, and the insurer may be estopped from asserting them. *See Wilkinson,* 601 S.W.2d at 522; *Williams,* 960 S.W.2d at 785.

■ Gilbert asserts that Underwriters assumed its defense for purposes of the exception because it pressured Gilbert to seek summary judgment on the immunity issues in the RT Realty suit without informing Gilbert of its coverage position if the summary judgment were granted. Gilbert presented testimony that, at one point, Underwriters informed Gilbert's counsel that if they "did not move forward on a motion for summary judgment ... on the immunity issue, [Underwriters] would invoke the cooperation clause and deny coverage for that reason." Based upon this evidence, Gilbert contends Underwriters voluntarily assumed control over Gilbert's defense and is estopped from asserting there is no coverage under the policies.

Underwriters responds arguing that the exception does not apply in this case because, among other things, Underwriters' actions did not amount to assuming Gilbert's defense in the RT Realty suit. We agree. It is undisputed that Gilbert's primary insurer, Argonaut, assumed Gilbert's defense in the RT Realty suit. Gilbert's counsel testified he asserted the defense of governmental immunity on Gilbert's behalf without any consultation with Underwriters. Accordingly, Underwriters had nothing to do with the actual formulation of the legal defense that ultimately resulted in the dismissal of the tort claims.

■ Under the cooperation clause in the excess policies, Underwriters had the right to "associate with" Gilbert in the defense of the underlying suit and to insist on cooperation "in all things" in the defense of the suit. The cooperation clause makes clear, however, that by associating with the insured in the defense of the suit, Underwriters does not assume the defense. The clause specifically states that Underwriters "shall not be called upon to assume charge of the settlement or defense of any claims made or suit brought or proceeding instituted against [Gilbert]." Associating with the defense of an insured does not, without more, rise to the level of assuming the insured's defense. *See Comsys,* 130 S.W.3d at 193; *Am. Eagle Ins. Co. v. Nettleton,* 932 S.W.2d 169, 174 (Tex. App.-El Paso 1996, writ denied).

Underwriters' statement to Gilbert that Gilbert's failure to pursue its governmental immunity defense to summary judgment would be a violation of the cooperation clause may or may not be an accurate statement under the law. But Gilbert was free to refuse to pursue summary judgment on the immunity defense and challenge Underwriters' denial of coverage if Underwriters ultimately chose to deny coverage on that basis. This decision would not have affected Gilbert's defense in the RT Realty suit because the defense was being provided by Argonaut, not Underwriters.

Gilbert relies on the case of *Ulico Casualty Co. v. Allied Pilots Ass'n,* 187 S.W.3d 91 (Tex.App.-Fort Worth 2005, pet. granted) for the proposition that an insurer need not have total or even extensive control of the insured's defense for the waiver and estoppel exception to apply. In *Ulico,* the court addressed whether an insurer had assumed the defense of its insured by

simply agreeing to pay the insured's defense costs and invoking the policy provision requiring that such costs be pre-approved. *Id.* at 100. The underlying suit was resolved in the insured's favor shortly after the insurer agreed to pay defense costs and before the insurer had any control over the substantive or procedural issues in the case. *Id.* When the insurer later attempted to deny coverage based on a policy provision it had not reserved its right to rely upon, the insured argued that the policy defense had been waived and the insurer was estopped from asserting it. *Id.* at 98. The insurer argued that waiver and estoppel did not apply because it had never directed or controlled any decisions in the litigation and, therefore, had not "assumed the defense" of the insured. *Id.* at 99 The court concluded that because the insurer had assumed the responsibility to control and pay the defense costs, it had assumed the defense of the insured for purposes of creating a conflict of interest. *Id.* at 100. The court stated the insurer should not get a "free pass" simply because the underlying suit was resolved quickly in the insured's favor. *Id.*

Unlike the facts presented in *Ulico,* Underwriters never assumed any responsibility to pay for Gilbert's defense. As stated above, the conflicts of interest between Underwriters and Gilbert could not affect the defense of the RT Realty suit because the defense of that suit was handled by Argonaut. *Ulico,* therefore, is inapplicable.

We conclude Underwriters' actions in this case do not rise to the level of assuming Gilbert's defense in the RT Realty suit. Because Underwriters did not assume Gilbert's defense, they have not waived their policy defenses and are not estopped from

raising the defense of non-coverage. Based on the foregoing, we also conclude the trial court erred in deciding that Underwriters was obligated to indemnify Gilbert under the terms of the excess insurance contracts. Because of our resolution of this issue, it is unnecessary for us to address the remaining issues raised by the parties in this appeal.[3]

We reverse the trial court's judgment in part and render judgment that Gilbert take nothing by its breach of contract and coverage claims against Underwriters. Based on this holding, we also reverse the trial court's award of attorney's fees to Gilbert. The remainder of the trial court's judgment is affirmed.

---

**3.** Gilbert conceded in oral argument that if we resolved the coverage, waiver, and estoppel issues in favor of Underwriters, its extra-contractual claims would fail as a matter of law.