# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 5, 2021
Lyle W. Cayce
Clerk

No. 20-50274

Texas Disposal Systems, Incorporated,

*Plaintiff—Appellant*,

*versus*

FCCI Insurance Company; Arch Specialty Insurance Company,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-701

Before King, Smith, and Haynes, *Circuit Judges*.

Per Curiam:[*]

After one of its employees caused a tragic accident, Texas Disposal Systems, Inc. ("TDS") turned to its insurance "tower." This tower was composed of four stacked liability insurance policies: primary insurance from FCCI Insurance Company ("FCCI") followed by three excess insurance

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

policies, with Arch Specialty Insurance Company ("Arch") providing the final tier. Together, these policies provided TDS with $17 million of coverage. The first three also imposed a duty on the insurers to defend TDS, but the Arch policy granted Arch the right, but not duty, to defend. Nonetheless, TDS believed that Arch had agreed to assume its defense upon the exhaustion of the underlying policies, although it ultimately declined to do so.

TDS sued FCCI and Arch for breach of contract, alleging that FCCI had terminated its defense too early and that Arch had improperly refused its defense obligation. After some discovery disputes, the district court granted summary judgment for FCCI and Arch. For the following reasons, we AFFIRM.

## I.     Background

### A.     The Insurance Tower

TDS obtained a "tower" of four automobile liability insurance policies: FCCI provided primary coverage with a limit of $1 million per accident, then Rockhill Insurance Company followed by Liberty International Underwriters, Inc., with excess coverage of $1 million and $10 million, respectively. Finally, at the top of the tower, Arch provided excess coverage with a limit of $5 million.

The first three policies imposed successive duties to defend. By contrast, the Arch policy gave Arch the "right[,] but not the duty," to defend covered claims upon the exhaustion of the FCCI, Rockhill, and Liberty policies. If Arch did assume TDS's defense, the policy provided that Arch "may . . . withdraw from the defense" upon the exhaustion of its coverage limit. Additionally, the policy gave Arch "the right, but not the duty, to be associated with the insured or the underlying insurers or both in the investigation of any claim or defense of any [covered claim]."

### B.     The Underlying Lawsuit

In July 2016, Carl Weige, a TDS employee, crashed a TDS truck into a bridge. *Gardner v. Tex. Disposal Sys., Inc.*, No. 14-18-00688-CV, 2020 WL 1150556, at *1 (Tex. App.—Houston [14th Dist.] Mar. 10, 2020, no pet.) (mem. op.). The bridge collapsed, injuring Leah Bullock and killing her twelve-year-old daughter. *Id.* Bullock's two other children witnessed the incident but were uninjured. *Id.*

On behalf of herself, her surviving children, and the deceased child's estate, Bullock brought suit against Weige and TDS in Texas state court. *Id.* Separately, the deceased child's father, Brandon Gardner, sued TDS for wrongful death; the cases were eventually consolidated. *Id.* Acting in accordance with its policy, FCCI assumed TDS's defense, hiring attorney David Merkley to represent TDS. Later, FCCI retained separate counsel for Weige.

Ultimately, FCCI, Rockhill, and Liberty tendered their coverage limits to Arch, allowing Arch to direct settlement negotiations with the Bullock plaintiffs and with Gardner. The parties attempted to mediate the dispute in November 2017. The mediation did not resolve Gardner's claims, which remained scheduled for trial on January 23, 2018. However, the parties did agree to settle the Bullock plaintiffs' claims for an amount that would exhaust the FCCI, Rockhill, and Liberty policies but would not exhaust the Arch policy. Specifically, the settlement agreement provided that Bullock would "receive the total [settlement amount], on or before within 30 days drafting instruction, tax id., court approval and ~~court approval~~ executed release, which sum will be paid by the combined insurance

defendants."[1]  A separate provision stated that "[t]his settlement is subject to court approval."

The settlement was structured as a bundle of individual settlements, including separate settlements with the surviving children, Leah Bullock, and the deceased child's estate. The settlement with the surviving children was approved on December 21, 2017, and the separate settlement with the deceased child's estate was approved on February 14, 2018.[2]  Finally, the Bullock plaintiffs nonsuited their claims with prejudice on February 21, 2018.

On December 1, 2017, FCCI notified TDS, Arch, and the other insurers that payment to the Bullock plaintiffs would exhaust its coverage limit, and that it would cease its defense of TDS upon the actual payment of its coverage limit.  Subsequently, on December 27, 2017, FCCI issued a settlement check to the Bullock plaintiffs, exhausting its coverage limit. Thereafter, FCCI ceased defending TDS.

On January 10, 2018, Arch sent a  letter to TDS, declining to exercise its right to assume TDS's defense.  Subsequently, Rockhill's coverage became exhausted on January 15, 2018, as did Liberty's (a point TDS has not challenged).   Facing the impending Gardner trial, TDS began paying for its own defense.   The Gardner case yielded a $1.1 million judgment for compensatory damages, *Gardner*, 2020 WL 1150556, at *1, such that the total damages owed by TDS was less than the total policy limits of the four policies.

---

[1] A portion of this part of the settlement agreement was handwritten, and, as a result, "court approval" was crossed out and replaced with "executed release."

[2] Court approval of the settlement with the surviving children was required under Texas Rule of Civil Procedure 44(2), and court approval of the settlement with the deceased child's estate was required under Texas Estates Code § 351.051(a)(4).

No. 20-50274

## C.    The Procedural History of This Case

In August 2018, TDS sued FCCI and Arch in federal district court. TDS asserted that FCCI had breached its duty to defend TDS when it ceased paying defense costs prior to the final dismissal of the Bullock claims on February 21, 2018.  Relatedly, TDS alleged that Arch had agreed to assume its defense upon the exhaustion of the underlying policies, and that Arch had improperly reneged on this assumption by failing to pay any defense costs. TDS also alleged several extra-contractual claims against Arch.

During discovery, TDS sought to depose Julie Tucker, Arch's claims-adjuster, but, due to her cancer treatment and Arch's contention that she was no longer employed by Arch, TDS was unable to obtain the deposition, and the discovery deadline was looming. Thus, TDS filed an opposed motion to extend the discovery deadline to permit Tucker's deposition.  The magistrate judge denied TDS's motion to extend the deadline.  TDS appealed the magistrate judge's ruling, and the district court affirmed.

Meanwhile, instead of Tucker, TDS deposed Christine Schneider as Arch's corporate representative.  During her deposition, Schneider testified that Arch had hired an attorney, Will Moye of the Thompson Coe law firm, to represent TDS during the underlying litigation.  However, after her deposition, Schneider amended her testimony under Federal Rule of Civil Procedure 30(e) to indicate that Arch had hired Moye as its own outside counsel and that Moye never represented Arch.

The parties filed cross motions for summary judgment as to which FCCI and Arch prevailed.  TDS timely appealed.

## II.    Jurisdiction & Standard of Review

The district court had diversity jurisdiction under 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291.

5

We review de novo the district court's grant of summary judgment, including its "determination of state law"[3] and "its interpretation of the insurance contract." *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs.*, 612 F.3d 800, 804 (5th Cir. 2010). Under Federal Rule of Civil Procedure 56(a), a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing such motions, courts "view[] the evidence in [the] light most favorable to the non-moving party." *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009).

A district court's limitations on discovery are reviewed for abuse of discretion. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 261 (5th Cir. 2011). Even if the district court abused its discretion, we will only vacate or reverse if the appellant demonstrates prejudice flowing from the district court's error. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005); *Crosby*, 647 F.3d at 261.

## III. Discussion

TDS raises four issues on appeal. First, TDS contends that the district court's grant of summary judgment to FCCI was improper because FCCI was obliged to continue defending it until February 14, 2018, when the settlement with the deceased child's estate was approved.[4] Second, TDS asserts that the district court erred by entering summary judgment on its breach-of-contract claim against Arch because Arch either agreed to assume TDS's defense or actually assumed TDS's defense. Third, TDS maintains

---

[3] The parties agree that Texas law governs this case.

[4] TDS offers no explanation for why it has changed positions since appearing before the district court, where it asserted that FCCI was obliged to continue defending it until February 21, 2018, the date the Bullock plaintiffs nonsuited their claims with prejudice.

No. 20-50274

that the district court erred in granting summary judgment on its extra-contractual claims against Arch on the basis that these claims fail to seek relief beyond policy benefits. Fourth, TDS seeks reversal of the district court's refusal to extend the discovery deadline to permit TDS to depose Tucker. We examine each issue in turn; none of TDS's arguments prevail.

## A.    The Breach-of-Contract Claim Against FCCI

Under its policy, FCCI was obliged to continue defending TDS until its policy had been exhausted through the "payment of . . . settlements." FCCI maintains that this condition was satisfied when, on December 27, 2017, it issued a settlement check to the Bullock plaintiffs that exhausted its policy limit. TDS does not contest that FCCI's December 27 payment exhausted the policy's limit; rather, TDS argues that the payment was premature. According to TDS, the mediation agreement with the Bullock plaintiffs prohibited FCCI from tendering payment until the entire settlement had received all the necessary court approvals. Because the settlement with the deceased child's estate was not approved until February 14, 2018, TDS contends that FCCI was required to withhold payment to the Bullock plaintiffs until February 14, and thereby to also continue defending TDS.[5] Thus, the key issue is how to interpret the mediation agreement.

Under Texas law, settlement agreements are subject to the ordinary rules of contract interpretation. *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018) (relying on contract principles to interpret a settlement agreement). Generally, "contract terms are given their plain, ordinary meaning, considered in light of the contract as a whole, unless the contract itself shows that the parties intended the terms to have a different, technical

---

[5] TDS concedes that the payment of a settlement can exhaust an insurance policy and that FCCI's duty to defend expired upon an exhaustive settlement payment.

meaning." *Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 445 (5th Cir. 2018) (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158–59 (Tex. 2003)).     Moreover, "objective manifestations of intent control," and courts are to "presume parties intend what the words of their contract say." *URI*, 543 S.W.3d at 763–64 (internal quotation marks and citation omitted); *see also RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (explaining that when interpreting a contract, a court is to "give effect to all of the words and provisions so that none is rendered meaningless").

Here, the mediation agreement provided that the Bullock plaintiffs would receive payment "on or before within 30 days . . . [of] court approval." Even if this language required FCCI to await court approval before tendering payment,[6] this condition was satisfied: FCCI did not tender payment until after the settlement with the minor children received court approval on December 21, 2017, with judgment entered to that effect.  The individual settlement agreement for the surviving children required a cash payment well in excess of FCCI's coverage limit.  Thus, despite TDS's best efforts, the mediation agreement's terms cannot be twisted to mean that FCCI was required to wait any longer than it did to exhaust its coverage limit and cease defending TDS.  Hence, the district court appropriately granted summary judgment in favor of FCCI.

---

[6] From our perspective, TDS's position seems completely untenable in light of the mediation agreement's retention of the "on or before" phrase, which explicitly permitted the insurers to tender payment to Bullock prior to court approval. Yet, for whatever reason, FCCI does not specifically rely on this phrase in its briefing, and so we remain within the confines of the issue as the parties have presented it. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (reminding lower courts to "follow the principle of party presentation").

## B.    The Breach-of-Contract Claim Against Arch

Although there is no dispute that the Arch policy imposed no duty to defend TDS upon Arch (presumably in exchange for a lower premium), TDS contends that during the course of the underlying litigation, Arch had nonetheless bound itself to assume TDS's defense. TDS's briefing suggests two theories as to how Arch could have done so: (1) that Arch and TDS somehow modified the Arch policy so as to impose a duty to defend upon Arch; or (2) that Arch invoked its contractual right to defend TDS and actually assumed TDS's defense.

The first theory fails because a modification to an insurance policy requires "a meeting of the minds supported by consideration." *D2 Excavating, Inc. v. Thompson Thrift Constr., Inc.*, 973 F.3d 430, 435 (5th Cir. 2020) (quoting *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986)); *Travelers Indem. Co. v. Edwards*, 462 S.W.2d 533, 535 (Tex. 1970) (applying this rule in an insurance case). There is simply no evidence of consideration in this case. Hence, to survive summary judgment, TDS needed to show that there was a genuine dispute of material fact as to whether Arch actually assumed its defense.

Arch did not make the necessary showing. Indeed, Arch could not assume the defense until "the total Limits of Liability of [the] underlying insurance . . . [were] exhausted solely by payment of loss." This condition was not satisfied until January 15, 2018, when the Rockhill and Liberty policies were exhausted—five days after Arch notified TDS that it was declining to exercise its right to assume TDS's defense.

TDS nevertheless argues that Arch waived this condition on its right to defend. Yet, as TDS concedes, an insurer can only waive policy provisions intended for the insurer's benefit. *See* RESTATEMENT OF LIAB. INS. § 5 cmt. a (AM. L. INST. 2019 & Oct. 2020 update) ("A party to a contract can

waive only terms that benefit the waiving party."). The condition at issue here did not benefit Arch—indeed, it is a *restriction* on Arch's *right* to defend TDS. Instead, the condition benefitted FCCI, Rockhill, and Liberty (and, indirectly, TDS as their policyholder), as it served to keep Arch from meddling in their defense of TDS until their policy limits had been exhausted. *See id.* § 20 cmt. a (discussing the "other insurance" problem in liability insurance).[7] Consequently, the district court correctly granted Arch summary judgment on the breach-of-contract claim.

## C.     The Extra-Contractual Claims Against Arch

Given our conclusion that TDS does not prevail on its contractual issues, our analysis of TDS's extra-contractual claims begins with the Texas Supreme Court's decision in *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018). In *Menchaca*, the court reaffirmed that, in most cases, "an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the

---

[7] Even setting aside the inability to waive, we conclude that no genuine dispute of material fact was presented as to whether Arch actually assumed the defense. TDS's key piece of evidence was Schneider's unamended deposition testimony that Moye was hired to represent TDS. Although the parties spend a considerable amount of their briefing debating whether Schneider's unamended deposition testimony was admissible, the issue is doubly immaterial. First, Arch ultimately concedes that the district court was permitted to consider Schneider's unamended testimony. Second, and more importantly, Schneider's unamended testimony was insufficient to demonstrate a genuine dispute of material fact. Under Texas law, "[a]ssociating with the defense of an insured does not, without more, rise to the level of assuming the insured's defense." *Underwriters at Lloyd's of London v. Gilbert Tex. Constr., L.P.*, 245 S.W.3d 29, 36 (Tex. App.—Dallas 2007), *aff'd*, 327 S.W.3d 118 (Tex. 2010). Moye's conduct—communicating his views on trial strategy and participating in settlement discussions—amounted to nothing more than "associating" with TDS's defense. *See* RESTATEMENT OF LIAB. INS. § 23(1)(b) (noting that the right to associate in a defense includes "[a] reasonable opportunity to be consulted regarding major decisions in the defense of the action"). Rather than Moye, Merkley, the counsel hired by FCCI, remained firmly in the "first chair." Thus, Moye's actions did not rise to the level of assuming TDS's defense.

policy."[8] *Id.* at 490; *see also State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) ("When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive."). However, the *Menchaca* court also announced several qualifications to this general rule, two of which TDS invokes on appeal: (1) that "even if the insured cannot establish a present contractual right to policy benefits, the insured can recover benefits as actual damages under the [Texas] Insurance Code if the insurer's statutory violation caused the insured to lose that contractual right"; and (2) that "if an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy does not grant the insured a right to benefits." 545 S.W.3d at 489.

With respect to the first of these *Menchaca* qualifications, TDS relies on a series of communications in which it asserts that Tucker implied that Arch would assume TDS's defense upon the exhaustion of the underlying policies. According to TDS, because Tucker implied that Arch would assume its defense, it did "not resist or object to the Bullock settlement," and that "[i]f the Bullock settlement had not happened, the FCCI policy would not have been quickly exhausted, and TDS would not have lost its covered defense." That is, TDS claims that Arch's alleged extra-contractual violations caused TDS to lose its right to FCCI's defense. Yet, this argument is specious, as TDS presents no evidence that it could have prevented any of the insurers from settling with the Bullock plaintiffs, whether by persuading FCCI to withdraw or otherwise. Although TDS asserts that it would have "thrown a fit" if it had known that Arch did not intend to assume TDS's defense, TDS details no mechanism by which this "fit" could have definitively blocked the settlement. As there is no indication that FCCI

---

[8] TDS does not contest that this rule applies with equal force to its non-statutory as well as statutory claims.

would have refused to settle so it could continue to pay TDS's defense costs, this theory is untenable. *See id.* at 491 (affirming "the principle that an insured who sues an insurer for statutory violations can only recover damages 'caused by' those violations").

With respect to the second *Menchaca* qualification, TDS asserts that the loss of FCCI's defense was an independent injury. But as before, TDS did not produce the evidence necessary to demonstrate a genuine issue of material fact as to whether Arch's actions caused TDS to lose FCCI's defense. Accordingly, TDS did not identify any harms stemming from Arch's alleged extra-contractual violations beyond the loss of policy benefits, meaning that TDS's extra-contractual claims were barred under *Menchaca*. The district court therefore appropriately granted Arch summary judgment on these claims.

### D.    The Tucker Deposition

Finally, TDS challenges the magistrate judge's refusal (which was affirmed by the district court) to extend the discovery deadline to permit TDS to depose Tucker, even though an extension was granted to allow the deposition of several expert witnesses. A close question is presented of whether the magistrate judge abused her discretion in criticizing TDS for attempting to accommodate Tucker, who was in the midst of cancer treatment, and we do not condone the notion that TDS should have subpoenaed a witness who was in the midst of a serious medical issue and accompanying treatment. *Cf. Dondi Props. Corp. v. Com. Sav. & Loan Ass'n*, 121 F.R.D. 284, 288 (N.D. Tex. 1988) (en banc) (directing attorneys to "adhere to [a] higher standard of conduct" because "[e]ffective advocacy does not require antagonistic or obnoxious behavior" and requiring that attorneys "always treat adverse witnesses . . . with fairness and due consideration"); THE TEXAS LAWYER'S CREED—A MANDATE FOR

Professionalism, *reprinted in* Texas Rules of Court 865, 865 (West 2012) ("I will not arbitrarily schedule a deposition, . . . until a good faith effort has been made to schedule by agreement.").

However, even if the ruling was incorrect, TDS has not demonstrated that it was prejudiced, as is necessary to vacate or reverse the district court's judgment. *Fielding*, 415 F.3d at 428; *Crosby*, 647 F.3d at 261. Although Tucker's actions are at the center of this lawsuit, her internal thoughts are not: fundamentally, to either agree to assume TDS's defense or to actually assume that defense, Tucker would have had to interact with others, and TDS was able to collect evidence from all the relevant parties.[9] TDS identifies neither deficiencies in the record regarding communications by Tucker in which she would have agreed to assume TDS's defense, nor the omission of any actions Tucker took that could have amounted to the assumption of TDS's defense.[10] Thus, TDS has not demonstrated prejudice. *See Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (affirming the district court's denial of additional discovery because the appellant failed to "identify any nexus between the requested information and its inability to withstand . . . [s]ummary [j]udgment").

We AFFIRM.

---

[9] In place of Tucker, TDS was able to depose Christine Schneider as Arch's corporate representative.

[10] TDS argues that "[b]ased on [other witnesses'] testimony, and Ms. Tucker's own internal claim notes, Ms. Tucker would have confirmed that Arch committed to assume the defense once the limits below Arch's level were depleted." Yet, as discussed above, the other witnesses' testimony was insufficient to show that Arch assumed TDS's defense; it is unclear what more Tucker's testimony could have offered.